Hine, and others, Plaintiffs-Respondents, v. Vilter, Defendant-Appellant.

Supreme Court

*No. 76–458. Submitted on briefs February 27, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 772.)

For the appellant the cause was submitted on the brief of *Rummel, Caldwell, Cahill & Daly* of Oconomowoc.

For the respondents the cause was submitted on the brief of *Johnson, Brendemuehl & Swendson* of Oconomowoc.

HEFFERNAN, J.   The judgment and the subsequent order, which made the judgment absolute, followed the court's order granting the sellers' motion for summary judgment to enforce a contract for the sale of land.

On this appeal the defendant, the purchaser of the land, asserts for the first time that no contract was entered into between the parties because the requirements of sec. 706.02(1), Stats.,[1] the statute of frauds, were not complied with. Whatever the merits of defendant's argument may be, we are first confronted with the question of whether the defense of the statute of frauds can be raised for the first time on appeal. Because it cannot be, the only question is whether the parties entered into an enforceable oral contract to sell the land.

The record shows that Robert E. Hine, Carl R. Gallauer, and the Farex Corporation, the plaintiffs in this action, are owners of three acres of vacant commercial land in the Village of Oconomowoc Lake, Wisconsin. The defendant, Thomas R. Vilter, executed a written offer to purchase the property for the sum of $130,000. The offer was accepted by Sam H. Wiletsky, the agent for the owners and president of Farex Corporation. Wiletsky, through inadvertence and mistake, signed the acceptance,

---

[1] "706.02   **Formal requisites.**   (1) Transactions under s. 706.01 (1) shall not be valid unless evidenced by a conveyance which:

"(a) Identifies the parties; and

"(b) Identifies the land; and

"(c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and

"(d) Is signed by or on behalf of each of the grantors; and

"(e) Is signed by or on behalf of all parties, if a lease or contract to convey; and

"(f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage; and

"(g) Is delivered. . . ."

"Sam H. Wiletsky for H.G.W. Corporation." The written agreement did not state the identity of the owners. Following some negotiations, the purchaser, Vilter, refused to complete the transaction.

The plaintiffs, Hine, Gallauer, and Farex Corporation, brought an action for specific performance of the contract. The defendant, Vilter, answered, denying that the plaintiffs and defendant entered into any agreement in writing and denying that the copy of the offer-to-purchase form attached to the complaint was a copy of any agreement between the plaintiffs and the defendant. Following the joining of issue, both parties moved for summary judgment.

The affidavits of the defendant demonstrated that the purported acceptance of the offer was signed by Wiletsky for the H.G.W. Corporation, which was not a Wisconsin corporation or a foreign corporation licensed to do business in Wisconsin. The plaintiffs' motion for summary judgment was supported by affidavits of Hine, Gallauer, and Wiletsky. Each of these affidavits stated that the owners of the property were Hine, Gallauer, and the Farex Corporation, and that Wiletsky, the president of the Farex Corporation, was authorized to act as agent to accept the offer of the defendant, Vilter. In addition, Wiletsky's affidavit stated:

"[T]hat throughout all of the negotiations between himself and the defendant and Arthur L. Hoffman, a salesman for the A. H. Harrigan Company, the broker who negotiated said Offer to Purchase with the defendant Thomas R. Vilter, the said Thomas R. Vilter knew that Robert E. Hine, Carl R. Gallauer and Farex Corporation were the owners of said property and that Wiletsky was accepting said Offer as their agent."

These statements in the plaintiffs' affidavits were not disputed by any of the defendant's counter-affidavits. On the basis of these affidavits, the trial court concluded that there was no issue of fact to be tried and granted the

plaintiffs' motion for summary judgment. The judgment provided for specific performance of the contract. It directed the defendant to make full payment of the contract price upon the tender of the sellers' deed. In the event the defendant purchaser did not make payment, the judgment authorized the plaintiff-sellers to offer the property at public or private sale and authorized a deficiency judgment if the sale price did not equal or exceed the amount owed to the sellers under the contract.

In the trial court the defendant only pleaded the absence of any contract in writing. No mention is made in the trial court record that the contract failed to comply with the statute of frauds. On appeal, however, Vilter specifically argues that no contract existed between the parties, because all the requirements of sec. 706.02(1), Stats., were not complied with. In amplification of that position, Vilter argues that the writing did not identify the sellers and that no one signed on their behalf. The defendant is correct in his tardy assertion that the writing did not identify the plaintiffs as sellers and that the contract, therefore, did not comply with the statute of frauds. Sec. 706.01(1) provides in part that the statute of frauds:

". . . shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity."

The transaction, a contract for the sale of land, is within the coverage of the statute.

Sec. 706.02, Stats., provides that transactions described in sec. 706.01(1) shall not be valid unless the listed requirements, including identification of the parties, are set forth. Nevertheless, under sec. 706.04 a transaction which does not satisfy the requirements may still be enforceable, provided that all the elements of the transac-

tion are clearly and satisfactorily proved and an equitable reason for enforcement is established.

Accordingly, a party seeking to enforce a contract will be afforded the opportunity to prove, even though the writing under the statute of frauds is inadequate, that the contract should be enforced. This option, which makes it possible for one to enforce a contract which does not comply with the statute of frauds, is a reason for imposing the duty to assert the defense of the statute of frauds in the trial court.

It is black-letter law that the defense of the statute of frauds is waived if not raised in the trial court. Corbin states the rule:

"[T]he statutory defense must be called specifically to the attention of the trial court. It is universally held that the question cannot be raised for the first time on appeal. This is the rule irrespective of whether the statute is thought to make a contract void or merely unenforceable." 2 Corbin on *Contracts,* sec. 319, p. 150 (1950).

Williston points out that the statute of frauds is an affirmative defense. Unless the statute is raised by the defendant in the trial court, Williston explains:

". . . he will be deemed to have impliedly waived the objection that the contract upon which the plaintiff sues was not in writing, and thus forego the protection of the Statute. This is the rule in equity as well as at law. And it is almost universally held that the objection that the contract was within the Statute, when not presented or urged in the trial court, cannot be raised for the first time on appeal." 3 Williston on *Contracts,* sec. 527, p. 718 (3d ed., 1960).

The record shows that the defendant never raised the affirmative defense of the statute of frauds in the trial court. While the defendant did assert that the sellers

were not named in the writing, his argument was that no contract had been entered into. The statute was never cited to the trial court or referred to in the trial-court record. In the absence of specific pleading that the contract was unenforceable because of noncompliance with the statute of frauds, the trial court was correct when it ruled that there was no issue of material fact to be tried and that the plaintiffs were entitled to summary judgment to enforce the contract.

The only question presented to the trial court was whether Wiletsky's acceptance of the offer was on behalf of all the sellers. This question was resolved in favor of the sellers by the uncontroverted affidavit stating that Wiletsky was the agent of all the sellers and that throughout the negotiations the purchaser, Vilter, knew that Robert E. Hine, Carl R. Gallauer, and Farex Corporation were the owners of the property and that Wiletsky accepted the offer as their agent. The plaintiffs, by their uncontroverted affidavits, set out evidentiary facts which established a prima facie case for the formation of a contract for the sale of land. Because the defendant did not raise the affirmative defense of the statute of frauds, the plaintiffs were entitled to summary judgment.

Moreover, because of the defendant's failure to assert the defense of the statute of frauds at trial, the plaintiffs had no opportunity to go forward with any proof which would have entitled them to specific performance despite noncompliance with the statute. In the absence of the pleading of that affirmative defense, they were not required to show any equitable reasons for enforcement of the contract. It was sufficient to demonstrate to the court that a contract for the sale had been made.

It is also argued by the defendant that no contract exists, because there was no "mutuality of obligation."

As Corbin comments, 1A Corbin on *Contracts,* sec. 152, p. 2 ff. (1963), the phrase, "mutuality of obligation," is an amorphous one. Corbin points out, however, that:

"Mutuality of obligation should be used solely to express the idea that each party is under a legal duty to the other; each has made a promise and each is an obligor." (p. 4)

Corbin goes on to state, however, that this definition is not universally correct and that unilateral contracts, for example option contracts, are valid, although there be no "mutuality of obligation." Corbin summarizes saying, "Courts now often say correctly that it is consideration that is necessary, not mutuality of obligation." (pp. 5–6)

Corbin also points out that the term, "mutuality of obligation," is sometimes used in connection with the statute of frauds. He states:

"Sec. 282. Mutuality of Obligation
"One of the common statutory requirements is that the memorandum shall be signed by the party to be charged. Under such a statute the general holding is that where an otherwise sufficient memorandum is signed by only one party the contract is enforceable against him, even though it is not enforceable by him against the other. If this seems to run counter to the often repeated statement that both parties must be bound or neither is bound, it must be remembered that this statement is substantially incorrect. Furthermore, a party is in large degree 'bound' by his oral contract, even though he has signed no memorandum as provided by the statute, and there is no injustice in permitting him to enforce it. . . ." 2 Corbin, on *Contracts,* sec. 282, pp. 30–1.

The Wisconsin statute of frauds, in contrast to the type of statute discussed in this excerpt from Corbin, specifically requires that the writing be signed by, or on behalf of, all parties to a contract to convey. Sec. 706.02 (1) (e), Stats.

Basically, when the "mutuality of obligation" argument is coupled with the statute of frauds as an affirmative defense, it is merely a restatement of the position that the alleged contract fails because of the failure to comply with the provision that the writing be signed by, or on behalf of, all parties in accordance with sec. 706.02 (1) (e), Stats., but this is not an argument—the defense of the statute of frauds—that can be asserted initially on appeal. Accordingly, by "mutuality of obligation" in the instant case, we need have recourse only to the rules that apply to any bilateral contract. The contract here was a bilateral one, for it obligated the sellers to sell and the buyers to buy and pay the purchase price. This court said, in *Levin v. Perkins,* 12 Wis.2d 398, 403, 107 N.W.2d 492 (1961):

". . . but mutuality of obligation in a bilateral contract does not mean the liabilities of both parties or the benefits accruing must be equal. Neither does a contract lack mutuality of obligation merely because every obligation of one party is not met by an equivalent counterobligation of the other party. The mutuality of obligation means sufficient consideration, *i.e.,* a promise needs consideration to be binding and enforceable. This is elementary."

The defendant's reliance on *Dodge v. Hopkins,* 14 Wis. 686 (1861), is inappropriate. The problem in that case was that the writing was signed by one not authorized to act for the plaintiff. In the case now before the court, as the result of the uncontroverted affidavits of the plaintiffs, the fact was established that Wiletsky signed as agent for the sellers. Merely because the writing did not recite the names of the sellers cannot defeat the plaintiffs' cause of action when that defect—a failure to comply with the statute of frauds—was not asserted until appeal to this court.

*By the Court.*—Judgment and order affirmed.