**JACKSON HOLE BUILDERS, a Wyoming corporation, Appellant (Defendant),**

**Jackson Hole Realty, a Wyoming corporation, and Paul McCollister, (Defendants),**

**v.**

**R.J. PIROS and Helen O. Piros, Appellees (Plaintiffs).**

**No. 5707.**

Supreme Court of Wyoming.

Nov. 23, 1982.

Rehearing Denied Dec. 28, 1982.

David R. Hansen, Teton Village, for appellant.

David K. Larson, of Jackson, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

Appellees-buyers instituted this action for a judgment declaring the rights and duties of the parties to a contract between appellees (and their assignors) and appellant-seller.[1] The contract was one for sale by appellant to appellees of three condominium units yet to be constructed by appellant. Appellees also prayed in their complaint for a return of money deposited by them in escrow pursuant to the contract. In addition to appellant, Jackson Hole Realty and Paul McCollister were made defendants in the action. McCollister is a real estate broker and principal agent for Jackson Hole Realty. He was designated as the escrow agent under the contract. The judgment of the trial court was generally for appellees and directed a return of the escrowed deposit.

The issues on appeal in this case involve the interpretation of the following three paragraphs in the contract:

"3. *Sale of Units*—The Bank providing interim construction financing for the Seller has required that two-thirds of the condominium units in the Project be sold before construction of the Project can begin. In the event the Seller does not sell a sufficient number of the units to obtain such financing or does not for any reason begin construction of the Project by June 1, 1981, the Seller may give notice to the Buyer of the termination of this Agreement, pay the Buyer the Deposits made together with the interest attributable thereto (or assign the Savings Certificate to the Buyer) and this Agreement shall then cease and terminate and the parties hereto shall have no further obligations each to the other under this Agreement.

"4. *Financing*—This Agreement is subject to the condition that the Buyer is able to secure within ninety days from the date the Buyer receives the loan application from the lending institution financing for at least seventy-five percent of the purchase price of the Unit with the Interest at approximately one percent over the interest rate charged by the Federal Home Loan Mortgage Corporation ('FREDDIE MAC') at the time of Closing to be amortized over twenty (20) years. If after making a reasonable effort, Buyer is unable to secure such financing and if Buyer shall so notify the Seller within said ninety days this Agreement shall be null and void and the Deposits and Interest attributable thereto shall be returned to the Buyer or the Savings Account shall be assigned to the Buyer.

\*      \*      \*      \*      \*      \*

"8. *Costs of Closing*—\* \* \* The Buyer shall pay at the Closing all other costs of closing this transaction including without limitation \* \* \* lender's fees including a two percent loan origination fee \* \* \*."

Specifically the issues on appeal are:

1. Whether or not the provision in paragraph 3 of the contract authorizing only seller to terminate the contract for failure to obtain interim construction financing which required a presale of two-thirds of the units or if "[seller] does not for any reason begin construction of the project by June 1, 1981" makes the contract void from its inception for lack of mutuality and failure of consideration?

2. Whether or not seller breached its agreement by failing to sell two-thirds of the units before proceeding with the project?

3. Whether or not seller breached its agreement when it located financing for buyers at a higher rate than required by paragraphs 4 and 8 of the contract but offered to pay the difference resulting therefrom?

---

1. Actually, there were three contracts. Appellant was a party (seller) in all three. Appellees were parties (buyers) as individuals in one of them, and then were parties (buyers) in the other two in trust for their children. Appellees have now assigned their interest as trustees in these two contracts to themselves as individuals. We shall refer to all three contracts as the contract.

We reverse inasmuch as there was mutuality and consideration in the contract and inasmuch as seller did not breach the contractual requirements of paragraphs 3, 4 and 8.

## CONSIDERATION AND MUTUALITY

The contract was one in which seller agreed to construct condominium units according to certain plans and specifications and in which buyers agreed to pay a specified amount of money to purchase them. Subsequent to the execution of the contract, buyers requested certain design changes in the plans. Seller agreed, and the changes were included in the construction.

■ Mutuality in the sense that there must be a meeting of the minds as to the terms and conditions of the agreement or that both parties must assent to the agreement is required for the existence of a contract. *Shellhart v. Axford,* Wyo., 485 P.2d 1031 (1971); *Crockett v. Lowther,* Wyo., 549 P.2d 303 (1976). However, "mutuality of obligation" is not always a proper criterion by which to determine the existence of necessary consideration, as is here argued by buyers.

> "If the requirement of consideration is met, there is no additional requirement of
>> "(a) a gain, advantage, or benefit to the promisor or a loss, disadvantage, or detriment to the promisee; or
>> "(b) equivalence in the values exchanged; or
>> "(c) 'mutuality of obligation.'" Restatement of Contracts 2d., § 79, p. 200 (1981).
> "While the doctrine of mutuality of obligation may have a core of validity it has clearly been over-generalized and used as a mistaken premise for decisions defeating justified expectations. It has been subjected to so many so-called exceptions and judicial circumventions that it has been suggested that the term 'mutuality of obligation' should be abandoned. More importantly, the misleading notion that both parties must be 'bound' must be dispensed with. * * * " Calamari and

Perillo, Law of Contracts, (2nd Ed.1977), § 4–14, p. 157.

> "Mutuality of obligation should be used solely to express the idea that each party is under a legal duty to the other; each has made a promise and each is an obligor. * * * " 1A Corbin on Contracts, § 152, p. 4 (1963).

■ Seller did not sell two-thirds of the units before it began construction of the project on June 22, 1981. Subsequently, buyers indicated their desire to terminate the contract. At that time, seller was constructing the project. The contract was no longer executory on its part. The "mutuality of obligation" concept was never applicable to a contract involving an exchange of a promise for performance. Calamari and Perillo, supra, § 4–15. The minds of the parties were in accord that if the seller could not obtain sufficient interim construction financing he *may* give notice to buyers and the contract would terminate. This is not an illusory promise, i.e., one which makes performance of it entirely optional. Seller was committed to perform if the interim construction financing could be obtained. The requirement for sale of two-thirds of the units was anticipated to be a requirement of "the Bank providing interim construction financing." The requirement for presale of two-thirds of the units was obviously not pertinent inasmuch as the interim construction financing was either provided or was unnecessary as evidenced by the fact that the construction was accomplished. Before seller could make paragraph 3 of the contract a basis for termination of it, seller would have to establish its inability to obtain the interim construction financing, either because of failing to sell two-thirds of the units or because there was other reason for failure to begin timely construction. The necessity for seller to do so makes it impossible to characterize seller's obligation as illusory. Performance was not *entirely* at its option. Calamari and Perillo, supra, § 4–17; Restatement of Contracts 2d, supra, § 77.

> "A bilateral contract is not rendered invalid and unenforceable merely because

one party has the right to cancellation while the other does not. There is no necessity 'that for each stipulation in a contract binding the one party there must be a corresponding stipulation binding the other.' [Citations.]" *Laclede Gas Company v. Amoco Oil Company,* 522 F.2d 33, 36 (8th Cir.1975).

The question to be resolved is whether one party's right of cancellation has rendered all of its other promises in the agreement so illusory that there was a complete failure of consideration. See *Laclede Gas Company v. Amoco Oil Company,* supra; *Shattuck v. Precision-Toyota, Inc.,* 115 Ariz. 586, 566 P.2d 1332 (1977); *Bleecher v. Conte,* 29 Cal.3d 345, 173 Cal.Rptr. 278, 626 P.2d 1051 (1981); *Best v. Realty Management Corp.,* 174 Pa.Super. 326, 101 A.2d 438 (1953); *Pacific Pines Construction Corporation v. Young,* 257 Or. 192, 477 P.2d 894 (1970); and *Hine v. Vilter,* 88 Wis.2d 645, 277 N.W.2d 772 (1979). Certainly that is not the situation in this case. The seller's right of cancellation did not render all of its other promises so illusory as to result in a failure of consideration.

"Since the courts * * * do not favor arbitrary cancellation clauses, the tendency is to interpret even a slight restriction on the exercise of the right of cancellation as constituting such legal detriment as will satisfy the requirement of sufficient consideration; for example, where the reservation of right to cancel is for cause, or by written notice, or after a definite period of notice, or upon the occurrence of some extrinsic event, or is based upon some other objective standard." 1 Williston on Contracts, § 105, pp. 418–419 (3rd Ed.1957).

## BREACH FOR FAILURE TO SELL TWO–THIRDS OF THE UNITS

That said under the preceding section is here applicable. Seller did perform the ultimate consideration for the agreement. The project was constructed. The language of paragraph 3 of the contract concerned "interim construction financing." The purpose for permitting the seller to terminate the contract was to give it such option if the construction financing could not be obtained, i.e., if the economic situation created a condition making construction impossible. Such contract provisions are common in business contracts. The recitation in the contract that the bank required presale of two-thirds of the units was incidental to the principal condition relative to interim construction financing.

Paragraph 3 states that the seller—not the buyer—"may" terminate the contract if interim construction financing were unavailable or if there existed a "reason" for non-construction. Seller could not terminate the contract absent the inability to obtain "interim construction financing" or absent some "reason" for being unable to construct the project; but even if such inability or reason did exist, seller was not obligated to terminate the contract if it could perform on the ultimate consideration for the contract, i.e., if it could construct the project, including the units sold to buyers, in accordance with the plans and specifications and within the allotted time. This is no more than a reading and application of the plain words of the contract. The intention of the parties is there clearly expressed.

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citations.] If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction is done by the court as a matter of law. [Citations.]

"If the contract is ambiguous, resort may be had to extrinsic evidence. [Citations.] An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' [Citation.] Ambiguity justifying extraneous evidence is not generated by the subsequent

disagreement of the parties concerning its meaning. [Citation.]" *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980).

There is nothing indefinite about the language of this contract. It has but a single meaning: If construction of the project cannot be accomplished for seller's inability to secure interim construction financing or for other *reason, seller* may terminate the agreement. Construction of the project was accomplished. The source and nature of the interim construction financing for such is not revealed in the record. It was apparently accomplished without presale of two-thirds of the units. Buyers received that which they bargained for, and they cannot now say that seller breached the agreement.

### BREACH FOR FAILURE TO OBTAIN FINANCING FOR BUYER

It is difficult to understand buyers' position with reference to their contention that seller breached the agreement by failing to comply with its paragraphs 4 and 8.

The condition in paragraph 4 by which the *buyers* could terminate the contract if they are unable to secure financing for at least seventy-five percent of the purchase price is the reverse of paragraph 3 by which the *seller* could terminate the contract for failure to obtain interim construction financing. Although it is true that seller did obtain the necessary paragraphs 4 and 8 financing commitment from a lender as supplemented by seller's agreement to pay any interest rate and lender's fees in excess of that called for by the contract, there is nothing in the contract requiring it to do so. Rather, the contract language is plain in requiring the buyers to obtain the required financing.

If buyers made a "reasonable effort" to do so and such was unsuccessful, buyers could declare the contract "null and void" and secure the return of the escrowed deposit. Whether or not such effort was made is not an issue. Seller presented the means through which buyers could secure the financing and lender's fees within the limits set forth in paragraphs 4 and 8 of the contract. Buyers, then, could not invoke the conditions in paragraphs 4 and 8 to declare the contract null and void, let alone sustain a claim that seller had breached the contract through failure to comply with such paragraphs.

The quotation from *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* supra, is applicable to this issue. The language of the contract is plain. The onus for obtaining the financing within the agreed upon limits of paragraphs 4 and 8 was placed on buyers. There is nothing indefinite about it. There is only a single meaning. It cannot be said that seller is required to perform under paragraphs 4 and 8—although, in fact, seller did perform under them.

The judgment is reversed and the case is remanded with instructions to deny the prayer of the complaint and to make appropriate disposition in accordance with the prayer of the counterclaim.