SECURITY PACIFIC NATIONAL BANK, Trustee,
Plaintiff-Respondent,

v.

Stanley A. GINKOWSKI, Defendant-Appellant.†

Court of Appeals

*No. 86–1127. Submitted on briefs January 29, 1987.—Decided
June 3, 1987.*

(Also reported in 410 N.W.2d 589.)

† Petition to review denied.

On behalf of the defendant-appellant the cause was submitted on the briefs of *Walter W. Stern* of *Stern, Caviale & Stern* of Kenosha.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Dean B. Richards* of *Gray & End* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Stanley A. Ginkowski, mortgagor, appeals from a judgment of foreclosure. The trial court held that Security Pacific National Bank, Trustee (Security), a mortgage successor in interest, was entitled to equitable reformation of the mortage document as to the absent signature of Ginkowski. Ginkowski contends that he never signed the mortgage nor intended to sign it. Ginkowski further contends that Security has "unclean hands" and is thus not entitled to equitable relief because an agent of Universal Mortgage Corporation (Universal), Security's predecessor in interest, had forged Ginkowski's signature on the mortgage document.

We conclude that a failure to execute a document can be cured by a sec. 706.04, Stats., equitable relief proceeding and that sufficient evidence in the record supports the trial court's finding that Ginkowski intended to execute the mortgage. We further conclude that the doctrine of "clean hands" is not applicable to Security because the forged signature was not the basis for the relief sought against Ginkowski. Accordingly, we affirm.

Ginkowski applied for a loan to purchase a piece of property located in Kenosha, Wisconsin. He executed a promissory note for $53,200 to Universal. At the time of the closing, Ginkowski signed other documents

relating to the loan closing but did not sign a mortgage.

Theodore Schneider, acting as Universal's agent, discovered that Ginkowski had not signed the mortgage at the closing. Schneider subsequently authorized an employee to forge Ginkowski's signature and Schneider notarized it. Schneider did not inform Universal, his principal, that Ginkowski had not signed the mortgage. The promissory note and the forged mortgage were subsequently assigned to Security.

Approximately eight months later, Security sought foreclosure of the mortgage on the Kenosha property owned by Ginkowski. Ginkowski raised a statute of frauds defense, arguing that since he had never signed the mortgage it was invalid.

The trial court found that Ginkowski intended to grant a mortgage lien as part of the loan transaction. The court granted judgment of foreclosure and ordered that Ginkowski sign a mortgage document for recording, the mortgage to be effective *nunc pro tunc* to the date of the original closing. The court further found that although Universal's forgery of Ginkowski's signature was wrongful, the forgery did not constitute unclean hands so as to bar equitable relief because the parties had contemplated an agreement all along that the borrowed moneys would be secured with a mortgage and lien. Ginkowski appeals from that portion of the judgment granting equitable reformation.

Section 706.04, Stats., states in relevant part:

> **Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under

doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

(1) The deficiency of the conveyance may be supplied by reformation in equity; or

(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied.

There is no controversy as to the parties, land, interest asserted or delivery, and no such issues have been raised on appeal. The sole issue before the trial court was whether it should reform the mortgage as to the absent signature of Ginkowski.

█ The lack of a grantor's signature is a formal defect which can be cured by a sec. 706.04, Stats., equitable relief proceeding. *Nelson v. Albrechtson,* 93 Wis. 2d 552, 561, 287 N.W.2d 811, 816 (1980). The statute, however, cannot be utilized to supply a grantor's assent: "In order for a real estate transaction to be enforceable under sec. 706.04, it must at least be proved that the grantor or grantors assented to it." *Id.*

Ginkowski's first argument is that the evidence was insufficient to support the finding that he intended to execute the mortgage and that the trial court did not apply the proper burden of proof of clear and convincing evidence to justify reformation. We disagree.

As a preliminary matter, we note that Ginkowski is incorrect in his argument about the proper burden of proof under a sec. 706.04, Stats., equitable relief proceeding. Section 706.04 requires that "the elements of the transaction are clearly and satisfactorily proved . . . ." This is the burden the trial court applied.

Evidence adduced at trial included testimony that Ginkowski, an accountant and bookkeeper for over fifteen years, had education and experience in bookkeeping and had previously engaged in the purchase of residential and investment real estate and the financing of real estate purchases through mortgage loans. Based on Ginkowski's past familiarity with mortgage loans and the events that took place at the closing, the trial court unequivocally stated:

> I believe both parties agreed that you [Ginkowski] were going to enter into it [the mortgage] clear, convincing, satisfactory, you name it. I believe that there is absolutely intention to get monies secured by a mortgage at the time.

We conclude that the trial court's finding that there was clear and satisfactory evidence to prove Ginkowski's assent to the granting of a mortgage lien is not clearly erroneous. Secs. 706.04 and 805.17(2), Stats.

Ginkowski's second argument is that "the proper legal standard was not applied in that the trial court made no findings of mutual mistake nor fraud to satisfy the elements of reformation under Wis. Stats., Section 706.04." We cannot agree that a finding of mistake, mutual or otherwise, was required here.

For a contract to be reformed on the ground of mistake, the general rule is that the mistake must be mutual, or the mistake must be on one side and fraud on the other. *Sorce v. Rinehart,* 69 Wis. 2d 631, 638, 230 N.W.2d 645, 649 (1975). However, we are unpersuaded that the failure to sign the mortgage was a mistake. While alternative or more figurative definitions do broaden its scope, a mistake is primarily, and

337

most properly, "[a] misconception of the meaning of something," Oxford Universal Dictionary 1263 (rev. 3d ed. 1955), "a misunderstanding of the meaning or implication of something," Webster's Third New International Dictionary 1446 (1976). Here, no misunderstanding or misconception occurred. Notably, our supreme court has characterized the lack of a signature not as a mistake but as a "formal defect which can be cured by application of sec. 706.04, Stats." *Nelson,* 93 Wis. 2d at 561, 287 N.W.2d at 816. Even the trial court here called the lack "an oversight."

■

Concerning equitable reformation, our supreme court has stated:

> [Section] 706.04, Stats., contains two requirements that must be met in order for a real estate transaction not evidenced by a valid writing to be enforceable: (1) the elements of the contract must be clearly and satisfactorily proved, and (2) it must fall within one of the exceptions enumerated in that section. [Citation omitted.]

*Id.* at 559–60, 287 N.W.2d at 816. The elements that must be established to fulfill the first requirement correspond to the formal requisites of sec. 706.02, Stats. *Id.* at 560, 287 N.W.2d at 816. The signature requirement was here fulfilled by the trial court's finding of assent. The second requirement, that the transaction must fall within one of the exceptions enumerated in sec. 706.04, Stats., is fulfilled by subsec. (1): "The deficiency of the conveyance may be supplied by reformation in equity ... ." Nothing limits equitable reformation solely to questions of mistake.[1]

---

[1]While *St. Norbert College Found., Inc. v. McCormick,* 81 Wis.

Ginkowski's third argument is that Security has "unclean hands" because Universal's agent, Schneider, forged his signature and thus Security should be barred from equitable relief. Ginkowski contends that had Schneider not acted fraudulently by notarizing the forged mortgage Security sought to have reformed, he (Ginkowski) may not have accepted the loan if it had been conditioned on his also giving a mortgage. We disagree.

For relief to be denied a plaintiff in equity under the "clean hands" doctrine, it must be shown that the alleged conduct constituting "unclean hands" caused the harm from which the plaintiff seeks relief. *S & M Rotogravure Serv. v. Baer,* 77 Wis. 2d 454, 467, 252 N.W.2d 913, 919 (1977). *S & M Rotogravure* states that "it must clearly appear that the things from which the plaintiff seeks relief are the fruit of *its own* wrongful or unlawful course of conduct." *Id.* (Emphasis added.)

In the instant case, the "harm" at issue is the act of Universal's agent in forging Ginkowski's signature. The forged signature has never been asserted by Security as a basis for relief. Security has readily acknowledged the existence of the forgery, pursued its

---

2d 423, 432, 260 N.W.2d 776, 781 (1978), does state: "A contract is not to be reformed unless there is a mutual mistake or a mistake by one party and fraud by the other" (footnote omitted), we do not believe this statement was intended to limit the nature of equitable relief to mistake alone. Rather, it was setting the standards for the kinds of mistake which allow equitable reformation where mistake exists. This reading is bolstered by other cases which address sec. 706.04, Stats., relief in a far broader fashion. *See, e.g., Hine v. Vilter,* 88 Wis. 2d 645, 649–50, 277 N.W.2d 772, 774 (1979).

remedy as if the signature did not exist and maintained that Ginkowski's assent was present although his signature was absent. As such, Security has never asserted that the forged signature caused the harm from which it presently seeks relief.

We distinguish this case from *Merten v. Nathan,* 108 Wis. 2d 205, 321 N.W.2d 173 (1982), an "unclean hands" case. *Merten* was a personal injury action wherein the plaintiff sought recovery for injuries sustained while she was taking a horseback riding lesson. The supreme court held unenforceable an exculpatory contract where the contract contained a false statement that the defendant had no insurance covering equestrian activities, stating that such a statement is highly relevant to a reasonable student's decision to sign a contract which allocates losses. *Id.* at 214, 321 N.W.2d at 178. In *Merten,* the act constituting the unclean hands, the defendant's false statement that he had no insurance, had occurred contemporaneously with the execution of the contract and thus related directly to the transaction at issue.

In contrast, Security's act which Ginkowski alleges as unclean hands, namely, Universal's forgery of Ginkowski's signature, occurred long after the parties had entered into their agreements and had completed their transaction. Unlike *Merten* where the defendant's false statement was an integral part of the transaction, the forgery by one of Universal's agents was not an integral part of the transaction at issue— the mortgage closing itself.

*By the Court.*—Judgment affirmed.