KRAUZA and another, Plaintiffs-Appellants, v. MAURITZ and another, Defendants-Respondents.

*No. 75–156. Submitted on briefs May 4, 1977.—*
*Decided June 1, 1977.*
(Also reported in 254 N.W.2d 251.)

278

For the appellants the cause was submitted on the brief of *Thomas P. Morrissy* of Lake Geneva.

For the respondents the cause was submitted on the brief of *Leslie L. Johnson* and *Davies, Thorson, O'Brien & Johnson* of Elkhorn.

ROBERT W. HANSEN, J.   Transactions for the sale of land are governed by ch. 706, Stats. *See,* sec. 706.01, Stats.   Sec. 706.02, Stats., the statute of frauds section, provides that a writing is required to evidence a transaction for the sale of land.

Where no writing exists, as in the present case, there may still be a valid agreement for the transfer of land if provisions of sec. 706.04, Stats., are met:

"*706.04 Equitable relief.* A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines

of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

"(1) The deficiency of the conveyance may be supplied by reformation in equity; or

"(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

"(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his position to his substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:

"(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; or

"(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped."

As to the entirely oral transaction for the sale of the farm by appellants to respondents, the trial court held that it came within the equitable alternative (sec. 706.04, Stats.) to the general requirement that such transactions be in writing (secs. 706.01, 706.02, Stats.).

As to the requirement in sec. 706.04, Stats., that all elements of the transaction be clearly and satisfactorily proved, the trial court found that ". . . the entire buy-back agreement was oral but the record is clear that plaintiffs orally agreed to sell back for what they 'had in it,' and that plaintiffs' word was good until August 1st." We agree. At the meeting of June 23, 1974, it was agreed that respondents would purchase the farm from appellants for what the latter "had in it."

Thus the parameters of the agreement were fixed. Subsequently, the parties agreed to the repurchase for

$50,000, plus interest on the appellants' loan at seven percent. While certain terms, such as closing costs, proration of taxes and furnishing evidence of title, were not mentioned, the trial court was entitled to accept testimony that such terms would be taken care of under the general agreement to pay "what you had in it."

All that is required when an agreement for sale of real estate *is* in writing is that the conveyance identify the parties, land, the interest conveyed and "any material term, condition, reservation, exception or contingency upon which the interest is to arise."[1] Here the agreement of the parties, if it had been in writing, would not fail for indefiniteness. It ought not so fail when tested under the sec. 706.04 equitable alternative to the writing requirement.

As to respondents' failure to meet the "deadline" of August 1, 1974—their tender of payment apparently being made on August 2d—the trial court noted that earlier deadlines for closing had been ignored and found: "[T]he testimony supports the conclusion that the deal would have gone through on August 2, 1974, had it not been for a clash of personalities between two of the parties involved."[2] The trial court accepted respondents' testimony that they had waited all day on August 1st for the appellants to return from Chicago. Under the circumstances, the trial court concluded: "In equity (where we are) time is not ordinarily regarded as of the essence of the contract in the absence of an express stipulation, a manifestation of such intent from the contract

---

[1] Sec. 706.02(1), Stats.

[2] The trial court reference is to the testimony of respondent Virginia Mauritz that, at a meeting of the parties along with her husband's mother, an argument ensued between the mother and appellant Vilius Krauza, at which time the latter stated that, if the mother of the respondent had not come along, the deal would have gone through.

or subject matter involved or an implication from the nature of the contract or circumstances of the case."[3]

Under these circumstances, where the parties were family friends at the time of entering their agreement, we agree with the trial court holding that the setting of August 1st as the closing date was not crucial or "of the essence" of the transaction here. Under these circumstances, in an action in equity, the holding of the closing date one or two days after the agreed-to "deadline" did not vitiate the agreement of the parties.

As to the requirement of sec. 706.04, Stats., that the party claiming estoppel has changed his position to his detriment, the trial court found: "The evidence is clear, satisfactory and convincing that in good faith reliance on the oral agreement of plaintiffs (to sell back the farm for what they had in it) defendants changed their position to their substantial detriment. The trial court found the respondents incurred detriment to wit: (1) The defendants gave up their plans to build a home on the senior Mauritz farm; (2) the Walworth County Zoning Law was in the interim amended to require thirty-five (35) acres for a residence in an agricultural zone; (3) the defendants planted soybeans on the farmland (apparently respondents expended $1,000, together with personal labor in planting such crops); and (4) the defendants painted the interior of the farmhouse. We agree with the trial court finding that adding the above together, the respondents changed their position to their substantial detriment.

However appellants claim the trial court erred in finding the most damaging change of position to be that which resulted from the change in the zoning ordinance —requiring respondents to own thirty-five acres on their

---

[3] The trial court cited 17 Am. Jur.2d 768.

parents' farm in order to build a house instead of the five acres previously required. The trial court took judicial notice of the existence of the ordinance and its applicability to the land involved. (A trial court order directing respondents' attorney to file a certified copy of such ordinance apparently was not complied with.)

Statutes in this state provide the courts ". . . shall take judicial notice of: (a) County and municipal ordinances in those counties in which the particular court has jurisdiction."[4] Our court has upheld this statute, finding one valid reason for its enactment to be that ". . . such ordinances constitute the law of the forum and the judge of such a court [there a municipal court] must necessarily be familiar with the same. . . ."[5] Since a trial court in this state ". . . may take judicial notice on its own volition [of county ordinances],"[6] we find no reversible error in the failure of respondents' counsel to produce a certified copy of the ordinance as ordered by the trial court. Since the trial court was not required to compel such verification, the trial court was privileged to withdraw or waive the condition it attached to its taking judicial notice of the county ordinance involved.

As to the applicability of sec. 706.04, Stats., to the facts in this record, the trial court found: "The Court concludes, from the entire record and considering all of the facts and circumstances, it would be inequitable to deny defendants the specific performance they seek. At the same time, granting this relief will simply require the plaintiffs to do now what they agreed fair and square to do last July—sell back the farm for what they had

---

[4] Sec. 902.03(1)(a), Stats.

[5] *Racine v. Smith*, 272 Wis. 374, 377, 75 N.W.2d 454 (1956).

[6] *Bear v. Kenosha County*, 22 Wis.2d 92, 98, 125 N.W.2d 375 (1963).

in it." We agree. It was for situations such as the one here presented that the legislature created the equitable alternative (sec. 706.04, Stats.) to the general rule that transactions for the sale of real estate be in writing (sec. 706.02, Stats.). The judgment of the trial court granting specific performance legally and appropriately requires appellants to do now what they originally agreed to do—sell back the farm for what they had in it.

*By the Court.*—Judgment affirmed.