NELSON, and wife, Plaintiffs-Appellants, v. ALBRECHT-SON, and wife, Defendants-Respondents.

Supreme Court

*No. 77-320. Submitted on briefs January 8, 1980.—Decided February 7, 1980.*
(Also reported in 287 N.W.2d 811.)

For the appellants the cause was submitted on the brief of *James G. Birnbaum* and *Johns, Flaherty & Gillette, S.C.,* of La Crosse.

For the respondents the cause was submitted on the brief of *Donald J. Harman, Ltd.,* of La Crosse.

BEILFUSS, C.J. Plaintiffs-appellants Kerry and Nancy Nelson commenced this action by summons and complaint filed April 21, 1977, seeking specific performance and/or money damages from defendants-respondents Norris and Mavis Albrechtson for their alleged breach of an oral agreement to sell a three-story commercial building located at the northwest corner of Third and Main Streets in downtown La Crosse.

Respondents moved for summary judgment, and the trial court granted the motion and entered judgment accordingly on July 11, 1977.

Appellants subsequently moved the court to vacate its judgment. That motion was denied by order entered August 18, 1977. The present appeal is from both the trial court's judgment and its order denying the motion to vacate the judgment.

Appellants contend that the trial court erred in rendering summary judgment in favor of respondents because there are genuine issues of material fact which if resolved in their favor would entitle them to relief under sec. 706.04, Stats.[1]

---

[1] "706.04 **Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all

In *Ricchio v. Oberst,* 76 Wis.2d 545, 551, 251 N.W.2d 781 (1977), a case also involving the validity of a land transaction, we stated that the methodology to be employed by trial courts in determining whether a case should be disposed of by the summary judgment procedure is the same as that used by this court in determining whether the trial court abused its discretion in either granting or denying the motion for summary judgment. That methodology, we said, was set out in *Marshall v. Miles,* 54 Wis.2d 155, 160, 194 N.W.2d 630 (1972), as follows:

" ' "Summary judgment is a drastic remedy that should not be granted where material evidentiary facts are in dispute, or, where reasonable inferences can be drawn from undisputed facts that would lead to alternative and opposite results. [Cases cited] The summary-judgment procedure initially requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. [Case cited] However, the allegations of the pleadings

of the elements of the transaction are clearly and satisfactorily proved and, in addition:

"(1) The deficiency of the conveyance may be supplied by reformation in equity; or

"(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

"(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his position to his substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:

"(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; or

"(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped."

may not be considered as evidence or other proof on a disposition of the motion. [Cases cited] Assuming a cause of action and the existence of factual issues, an examination is then made of the moving party's (defendant's) affidavits and other proof to determine whether a prima facie defense has been established. [Case cited] If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. [Case cited] The summary-judgment procedure is not a trial on affidavits. [Case cited]" ' " *Ricchio v. Oberst, supra,* 76 Wis.2d at 551.

Applying that methodology to the instant case, we first note that appellants have alleged in their complaint a cause of action against respondents for breach of an agreement to sell their property. We also note that respondents have established by their affidavits a prima facie defense to this action and a case for summary judgment under the statute of frauds. Under that early common law doctrine, now codified in sec. 706.02, Stats., a writing is required to evidence a transaction for the sale of land.[2] Respondents assert both as an affirmative defense in their answer and in affidavits supporting their motion for summary judgment that they at no time agreed in writing to sell their property to appellants. This fact is undisputed.

However, even where no writing exists, there may still be a valid agreement for the transfer of land if the provisions of sec. 706.04, Stats., are met. *Krauza v. Mauritz,* 78 Wis.2d 276, 279, 254 N.W.2d 251 (1977). We

---

[2] Sec. 706.02, Stats., provides that a transaction for the sale of real estate is not valid unless evidenced by a conveyance. "Conveyance" is defined in sec. 706.01(3) as "a written instrument, evidencing a transaction governed by this chapter, which satisfies the requirements of s. 706.02."

must therefore examine the affidavits and other proof submitted by appellants "to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle [them] to a trial" on the issue of whether they are entitled to equitable relief under sec. 706.04.

According to the affidavits filed in opposition to respondents' motion for summary judgment, appellants indicated to respondent Norris Albrechtson on numerous occasions between September of 1976 and March of 1977 that they were interested in purchasing his building in downtown La Crosse and he indicated to them on these occasions that he would be willing to sell them this property. On or about March 18, 1977, appellant Kerry Nelson met with Albrechtson for the purpose of discussing such a sale. Nelson informed Albrechtson at that time that he and his wife were also negotiating for the purchase of a commercial building in Winona, Minnesota, but Albrechtson encouraged him to drop his efforts to obtain the other building and urged him to purchase his. The two men then toured the Albrechtsons' building.

Appellants further assert by affidavit that on or about March 25, 1977, Kerry Nelson again met with Albrechtson, this time to discuss the terms of the proposed sale. At this meeting, Nelson states, Albrechtson offered to sell the property and indicated that the terms would be "$125,000 purchase price, nine percent (9%) interest, $10,000 down, a 15-year note and $1,500 per month, payments to begin the month after the day of closing." At Nelson's request, Albrechtson gave him the leases for two of the businesses located in the building. Nelson then told Albrechtson he would notify him the following week if he decided to accept the offer.

Several days later, according to appellants' affidavit, Nelson informed Albrechtson that he accepted the offer upon the terms stated and offered to pay $100, or $1,000,

or any amount Albrechtson desired as earnest money. Albrechtson refused payment saying it was unnecessary. Nelson claims that he then informed Albrechtson that he was ceasing efforts to purchase the Winona building and Albrechtson responded that he understood and that they had a contract. Nelson further claims that it was never the intention of the parties to reduce their agreement to writing, but they were to close the transaction on March 31 at which time Albrechtson would furnish a land contract.

On March 31, 1977, or thereabouts, Albrechtson notified Nelson that he had sold the property to another party. Appellants state that Albrechtson admitted at this time that he had had a contract with them, but said that the other party had offered better terms. Albrechtson then offered to compensate Nelson for whatever expenses he may have incurred in attempting to purchase his property.

When appellants later contacted the owners of the other building they had contemplated buying, they were informed that it also had been sold. They state that they have continued to search for a commercial building which they could purchase, but have found none available. As a result of respondents' breach of their agreement, appellants claim to have suffered substantial detriment in the loss of the opportunity to purchase a commercial investment property in the La Crosse area and in the loss of rents and profits from the building they intended to buy as well as the expenses they incurred in negotiating the agreement.

It is appellants' contention on appeal that these facts, if found by a jury to be true, would entitle them to relief under sec. 706.04 (3) (b), Stats.

Although respondents strongly dispute several of the facts appellants assert by affidavit, a motion for summary judgment is not the proper procedure to resolve

such disputes. This court has repeatedly observed that the summary judgment procedure is not to be a trial on affidavits or depositions. *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis.2d 183, 189, 260 N.W.2d 241 (1977).

However, one fact which is not in dispute and which we deem fatal to appellants' claim for relief under sec. 706.04, Stats., is that they at no time discussed or arrived at any agreement with Mavis Albrechtson regarding the sale of the property which she owned jointly with her husband. In fact, at the time Kerry Nelson was negotiating the terms of the proposed transaction and entered into the alleged oral argeement with Norris Albrechtson, he wasn't even aware that Mavis Albrechtson had any interest in the property. This fact is evident from the following excerpt from the deposition of Kerry Nelson which was attached to respondents' motion for summary judgment:

"*Q.* Did either of you, you or Nancy, have any discussions with Mrs. Albrechtson with respect to the sale of the property?
"*A.* No, we didn't.
"*. . .*
"*Q.* Do you know that Mrs. Albrechtson has an interest in this property?
"*A.* I do now.
"*. . .*
"*Q.* Let me rephrase the question then that I just asked. Were you under the impression when you dealt with Mr. Albrechtson that he and he alone owned the property?
"*A.* Yes."

We have said that sec. 706.04, Stats., contains two requirements that must be met in order for a real estate transaction not evidenced by a valid writing to be enforceable: (1) the elements of the contract must be clearly and satisfactorily proved, and (2) it must fall

within one of the exceptions enumerated in that section. *In Matter of Estate of Lade,* 82 Wis.2d 80, 84, 260 N.W. 2d 665 (1978). The elements that must be established to fulfill the first requirement correspond to the formal requisites of a valid conveyance under sec. 706.02.[3] *Krauza v. Mauritz, supra,* 78 Wis.2d at 281.

One of the formal requirements of a written agreement for the sale of real estate is that it must be "signed by or on behalf of each of the grantors." Sec. 706.02(1)(d), Stats. The word "signed" is defined in sec. 706.01(4) to include "any handwritten signature or symbol on a conveyance intended by the person affixing or adopting the same to constitute an execution of the conveyance." The

---

[3] "706.02 **Formal requisites.** (1) Transactions under s. 706.01 (1) shall not be valid unless evidenced by a conveyance which:

"(a) Identifies the parties; and

"(b) Identifies the land; and

"(c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and

"(d) Is signed by or on behalf of each of the grantors; and

"(e) Is signed by or on behalf of all parties, if a lease or contract to convey; and

"(f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage; and

"(g) Is delivered. Except under s. 706.09, a conveyance delivered upon a parol limitation or condition shall be subject thereto only if the issue arises in an action or proceeding commenced within 5 years following the date of such conditional delivery; however, when death or survival of a grantor is made such a limiting or conditioning circumstance, the conveyance shall be subject thereto only if the issue arises in an action or proceeding commenced within such 5-year period and commenced prior to such death."

obvious purpose of requiring the signature of the grantor to appear on the conveyance is to evidence his intent to become bound by the agreement. 7 Thompson, *Real Property*, sec. 3220, p. 405 (1962).

Although the lack of a grantor's signature is a formal defect which can be cured by application of sec. 706.04, Stats., the lack of a grantor's assent to the transaction, which the signature merely symbolizes, is not. In order for a real estate transaction to be enforceable under sec. 706.04, it must at least be proved that the grantor or grantors assented to it. The assent of the parties is an essential element of even the most informal agreements. The lack of it is necessarily fatal.

Mavis Albrechtson asserts in an affidavit supporting respondents' motion for summary judgment that she at no time agreed to convey her interest in the subject property to appellants. As is revealed by the quoted portion of the deposition of Kerry Nelson, this fact is undisputed. Although Mrs. Albrechtson did testify at a deposition that her husband normally managed and negotiated the transactions respecting their property, this fact alone does not support the inference that he was authorized to act on her behalf in conveying her share of their jointly held property.

Authorization to act on behalf of another in a transaction for the sale of real estate may not be implied. Sec. 706.03 (1), Stats., provides:

"A conveyance signed by one purporting to act as an agent for another shall be ineffective as against the purported principal unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. The burden of proving the authority of any such agent shall be upon the person asserting the same."

As we noted in *Glinski v. Sheldon,* 88 Wis.2d 509, 517, 276 N.W.2d 815 (1979), this section "by its clear wording sets forth two distinct requirements: (1) an express authorization of agency; *and* (2) the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment."

In this case neither requirement has been fulfilled. The authorization of agency is at most implied, and the supposed authorizing principal was totally unknown to the buyer. If a written agreement signed by one purporting to act as agent for another is ineffective to convey an interest in property without the express authorization and identification of the principal, it certainly follows that an oral agreement on behalf of an unidentified principal and without express authorization is likewise ineffective.

The dangers that could result from our recognizing an implied agency between spouses to convey each other's interest in jointly held property are exemplified in the recent case of *State Bank of Drummond v. Christophersen,* 93 Wis.2d 148, 286 N.W.2d 547 (1980). In that case a wife forged her husband's signature in order to obtain a second mortgage on their jointly owned homestead without his knowledge or consent. She subsequently defaulted on the payments and the mortgagee foreclosed before the husband even became aware of the additional lien. In reversing the trial court's judgment modifying the original judgment of foreclosure, we held that the wife's attempted conveyance of her husband's interest in their homestead was void. *See also Glinski v. Sheldon, supra.*

Although our holding in *State Bank of Drummond* was based largely upon the fact that the property involved was homestead property, the same result follows here.

Just as one spouse cannot convey the interest of the other in homestead property, so also "[o]ne joint tenant cannot alienate the interests of the other joint tenants or in any way affect such interests." 4 Thompson, *Real Property*, sec. 1780, p. 31 (1979). Joint tenants do have the right to sell their individual interest and thereby sever the joint tenancy. *Nichols v. Nichols*, 43 Wis.2d 346, 349, 168 N.W.2d 876 (1969). However, it is clear here that no such partial sale was contemplated. The attempt by one joint tenant to convey the interest of another joint tenant or the entire property is of no effect. *Kurowski v. Retail Hardware Mut. Fire Ins. Co.*, 203 Wis. 644, 648, 234 N.W. 900 (1931).

Because Mavis Albrechtson was not a party to the transaction and because Norris Albrechtson was not expressly authorized to act for her, we hold that the alleged agreement between the parties is void and unenforceable. As a joint owner of the subject property, Mavis Albrechtson was a necessary party to the transaction and her assent to it was an essential element. Sec. 706.04, Stats., can be used to cure formal defects in a property transaction, but it will not create an agreement where none in fact ever existed. Here, we conclude, no enforceable agreement was ever reached.

*By the Court.*—Judgment and order affirmed.